Our fifth case this morning is Dalton v. Teva North America. Mr. Curtis. May it please the court. My name is Gregory Curtis and I represent the appellant, Cheryl Dalton. The issue before the court is did this court err in granting summary judgment for the defendant in this case. The plaintiff did not have an expert witness in this case because there was one that was not needed. The expert witness in this case would have been showing, the expert witness in this case would have been. You don't need to tell us what the excluded expert would have said because you haven't challenged the exclusion of the expert. In this case, your honor, there was no need for an expert witness. Expert witnesses, they show the relationship between drug and its effect. In this case, there was no drug or effect. In this case, my client was challenging. The situation was that when my client was taking her Paragard IUD out, having it removed, it broke. There is no medical causation here. We have two doctors, Dr. Reisinger, that's the doctor that took out the IUD, and Dr. Brown, she's an OBGYN, she's a hospitalist which deals with acute medical situations. They said that the only way that they could take this IUD out is that she would need a hysterectomy. So based on that, that's why this case was filed in court. But counsel, wouldn't an expert help a lay jury understand why it was a flaw in the IUD that caused the injury, caused it to break, rather than user error on the part of the doctors, for example? On page 14 of the brief, Dr. Reisinger explains how she took the IUD out. She had a grasper, she was supposed to pull on a string and the IUD normally comes out. In this case, she pulled on the grasper, she felt some tension, and then it snapped. So basically, a lay witness would be able to understand pulling on a string and an IUD breaking, and the need for further surgical procedures to have the IUD completely removed. Well, was it a design defect or a manufacturing defect that caused it to snap, or was it some defect, something that happened after it was manufactured and put in the market? How does a jury know? A jury, the IUDs normally, under normal circumstances, under normal circumstances... But you have a specific case. The question is what happened here, not what normally happens, isn't it? What happened here, Your Honor, it just broke. Basically it was probably, most likely, a manufacturer's defect because Dr. Reisinger said that, stated that in her testimony, that she's taken out over 200 IUDs, and basically normally they just come out, there's no problem. So this one had to be different from the rest of them. Counsel, can I ask you a jurisdictional question? So you submitted supplemental, in response to an order by the court, you gave us more information about the citizenship of the parties, but in looking at all the parties that you named in the suit, there are two, Teva Sales and Marketing and Teva Women's Health Sales Corporation, for which the principal place of business and state of incorporation is still unknown. Those two defendants should not have been listed. The only one that should have been listed was Teva Pharmaceuticals. But they are listed, right? Yes, they are, Your Honor. So don't they still affect the Calculus for Diversity Jurisdiction? Yes, they do, Your Honor, but basically they should not have been there, that's our mistake. But if they are there, and you don't provide any information about their citizenship, then the court lacks diversity jurisdiction. My client is from Indiana. Teva is from New Jersey. So because they're from two different states, that would give the jurisdiction to... But you didn't allege that either in your briefing, in your complaint, or in response to the order that the court issued asking you to specify the citizenship of all the parties. I think we did, Your Honor, just the two. Not for those two parties, unless I missed it. Not for those two. You did for the others, but not for those two. I apologize to the court for the simple fact that they should not have been listed as witnesses, defendants in this case. They were in Indiana. We're trying to get some information on those two companies, and we just listed them in abundance of caution. And they should have been removed. Anything further? Yes, Your Honor. Just to wrap up briefly. There was no medical causation in this case. Medical causation deals with the relationship between a drug and its effect. My client's need for a hysterectomy has nothing to do with her having excessive bleeding or anything that's listed on the warning label, or anything like that. Her need for a hysterectomy, further medical treatment, is because she... The IUD broke. It's still embedded in her uterus, and the bottom line is that it was recommended by two of her OBGYNs that she needs a hysterectomy for, to effect complete removal. Insofar as the lay witnesses are concerned, it's not like, well... In the case of Manuel V. Whitehall, where they were trying to see the medical effect of ibuprofen on... And its effect to renal failure. Basically, you would need an expert witness for that. Basically, they're trying to show that ibuprofen causes renal failure. This is not the case here. Here we're just trying to remove the IUD, and the only way to remove it, as stated by two doctors, is to have it removed by a hysterectomy. That's the only way they... I mean, there were attempts to have it removed in other ways. They did D&C, they did ultrasounds, they did x-rays, and the only thing they could come up with was that she would need a hysterectomy. There's been no testimony presented anywhere that there's another way to get it out. So that was the recommendation of the doctors. If there's no other questions, I'll reserve the rest of my time. Thank you. Mr. Peck. Good morning. Jeff Peck for the athletes. Your Honors, the plaintiff's argument skips necessary steps in making a claim. Plaintiff has to show defect and causation, and he needs an expert to do that, to show that there was a defect in the IUD that caused it to break. It was embedded, that's the record. When it was pulled on, it came out as the district court properly pointed out. There is no way, based on the evidence presented by the plaintiff, to tell whether that was physician error on placement, physician error on removal, a defect, or anything else. It's exactly the kind of thing when you're dealing with an IUD that's in the body, and there are interactions with human tissue, that you need expert testimony to come in and say why it broke, why it was defective, as plaintiff has alleged. Some of what's happened in the briefing to the court in trying to skip over to those It's defective because it broke when it was embedded and when it was removed, and that is replete throughout the amended complaint at paragraphs 14, 40, 42, 44, 50, 57, 60,  The plaintiff's acknowledgment that they have to prove proximate cause is at paragraphs 12, 29, 42, 44, 57, and 60, 62. There's a little bit of an attempt right now to re-engineer the claim, but the district court had it right. The plaintiff has the burden of proof to prove that there's a defect, that that defect caused it to broke, and that the injuries that are alleged, which are bleeding and pain and discomfort, resulted from some defect in the IUD. As the district court pointed out, the plaintiff failed to do that, and the district court properly ordered summary judgment. Perhaps you can shed some light on the jurisdictional question that Judge Barrett raised. Well, and I acknowledge it is a question here. The two entities that were otherwise named in the complaint, and I have to clarify that just for a moment, I don't recall offhand whether one is still an entity, but they were I understand and acknowledge the court's recent decision on subject matter jurisdiction that it's issued, and its concerns about making sure that the record is there to support that there is, in fact, complete diversity. I can tell you it's not in the record. I can tell you to the extent that those entities are still around, and as I mentioned, one of them may not be. They are not citizens of Indiana. I appreciate the court doesn't have that before in the record, and I understand that the court has a couple options. It could ask for further supplementation on that issue, and I also understand the court may decide that it doesn't have jurisdiction over the appeal. All right. I am going to order the parties to file within two weeks supplementals on the question of subject matter jurisdiction, and in particular, the question of whether there is complete diversity to support federal jurisdiction. We will comply, Your Honor, certainly. Is there anything further on the merits? Your Honors, there's not. Well, there is one thing. The plaintiff just argued that this doesn't involve anything that is a drug effect, and that somehow that differentiates it from the cases that we've cited in our briefs, but again, an IUD, the Peregrine IUD, is regulated as a drug by the FDA, and the issue here is did it have an effect in terms of binding with tissue, that when it was removed, the arm was left there, does that drug that remains the part of the drug have an effect on the pain and suffering and bleeding that's alleged by the plaintiff? So this is no different from any other alleged drug side effect case. It's the same type of thing where you have an interaction with tissue that the plaintiff is alleging gives rise to her claim and gives rise to the injuries or damages she's alleging. So there's no point of differentiation with Tucker or any of the other cases that we've cited in our briefing. Unless the panel has questions for me, I'll submit. All right. Thank you. Thank you. Mr. Curtis, anything further? Your Honor, my client did not file her claim because of bleeding discomfort or pain that she was receiving from the IUD. My client filed her claim because she, the only reason she filed it was because she needed a hysterectomy to get it removed. It has nothing to do with it embedding and things like that for the simple fact that that is on the warning label of the Paragard IUD device. Because my client has to undergo that surgery just to have it removed, that's why the case was filed. That's why there's no medical causation. Medical causation can be seen, like I said, in Manuel B. Whitehall where they try to say that ibuprofen caused renal failure, things like that, where the cause is associated with the effect of the drug. The injury is affected with the drug. This is not the case here. This is just a simple fact of my client needs a hysterectomy just to have it removed. Nothing further. Not for the bleeding, not for the pain, not for the discomfort. There were no experts named, even the doctors that treated her and installed it and removed it, were they named as experts? No, they were not, Your Honor, because it was straightforward. We didn't feel that experts were needed because her injury was objective. It was something that you could look at, you could see, another doctor could test her to see that this is the case, and the only thing was that she would need a hysterectomy to have completely removed. Thank you. All right, thank you. Our thanks to both counsel. The case is taken under advisement, and we look forward...